UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | |
| | * | Criminal Case No. 14-30044-MGM |
| SYED BOKHARI, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM AND ORDER REGARDING MAGISTRATE JUDGE'S MEMORANDUM
AND ORDER ON DEFENDANT'S MOTION FOR ORDER RELEASING
SEIZED FUNDS NECESSARY FOR LEGAL DEFENSE
(Dkt. No. 27)

November 19, 2015

MASTROIANNI, U.S.D.J.

## I. INTRODUCTION

Pursuant to an indictment filed October 16, 2014 (Dkt. No. 2, "Indictment"), defendant Syed Bokhari ("Defendant") is charged with money laundering and conspiracy to commit money laundering, among other crimes. The Indictment includes forfeiture allegations pursuant to 18 U.S.C. § 982. On November 24, 2014, Defendant filed a Motion for Order Releasing Seized Funds Necessary for Legal Defense, which sought the release of certain seized assets he asserted were necessary to enable him to pay for counsel of his choice. (Dkt. No. 27, "Defendant's Motion.") On January 16, 2015, this court referred Defendant's Motion to Magistrate Judge Katherine A. Robertson pursuant to Federal Rule of Criminal Procedure 59(a) and 28 U.S.C. § 636(b)(1)(A). (Dkt. No. 49.) On March 6, 2015, Judge Robertson issued a Preliminary Memorandum and Order finding that Defendant had made a sufficient threshold showing of financial need to entitle him to a hearing on the forfeitability of the seized assets. (Dkt. No. 73.) Following the hearing, Judge Robertson issued a Memorandum and Order on July 27, 2015, finding that Defendant was not required to

make a further showing of financial need, but ultimately denying Defendant's Motion on the issue of forfeitability. (Dkt. No. 112, "July 27 Order.") Defendant filed an objection seeking to have this court set aside the July 27 Order and grant Defendant's Motion. (Dkt. No. 120, "Def. Objection.") For the reasons set forth below, the court determines that a new hearing before Judge Robertson on the question of Defendant's financial need is required. The court therefore modifies the July 27 Order solely to the extent it did not require Defendant to make a further showing of financial need by a preponderance of the evidence.

## II.   RELEVANT FACTS[1] AND PROCEDURAL HISTORY

On June 5, 2012, the government executed warrants authorizing the seizure of Defendant's assets, including bank accounts, cash, motor vehicles, and tobacco products stored in a warehouse in Scranton, Pennsylvania (the "Scranton Tobacco"). (July 27 Order at 1.) The warehouse in Scranton was the base of operations of Cigar & Supplies, Inc. ("C&S"), a business that was wholly owned by Defendant. By agreement of the parties, dated July 25, 2012, the Scranton Tobacco was sold at auction, netting $1,015,523.48 (the "Tobacco Funds"). (*Id.*) On October 1, 2012, the government filed a civil forfeiture proceeding for possession of the seized assets. (*See United States v. $314,635.90 in United States Currency*, Civil Case No. 12-30167-RWZ, Dkt. No. 3, Complaint.) In November 2013, after certain assets had been returned to Defendant, the parties entered into a settlement agreement with respect to the civil forfeiture case. (*See id.*, Dkt. No. 279-1, Settlement Agreement.) The settlement agreement provided that, if the government filed an indictment that included the Scranton Tobacco as forfeitable property, then the government would retain custody of the Scranton Tobacco until final adjudication of the criminal case, or until such time as "an order for the

---

[1] Judge Robertson found the factual allegations in the Indictment supporting the grand jury's findings of probable cause must be treated as established for the purposes of Defendant's Motion, a conclusion to which Defendant does not object. (July 27 Order at 3-4.) Additionally, Defendant largely does not object to Judge Robertson's findings of fact. This court's factual findings therefore draw from the July 27 Order and the documentation underlying it.

return of some or all of the Scranton Tobacco prior to the final adjudication of the criminal case is entered by the District Court presiding over such criminal case." (*Id.* ¶ 9(b).)

On October 16, 2014, the government filed the thirty-two count Indictment that included the Scranton Tobacco (which had since been sold and converted into the Tobacco Funds) as forfeitable property. (Indictment at 27-28.) On November 24, 2014, Defendant's Motion was filed, seeking the release of the Tobacco Funds to enable Defendant to pay for his counsel of choice. In Defendant's Motion, he asserted that access to the Tobacco Funds was "essential to [his] ability to retain his counsel of choice and fund his legal defense and thereby secure his Sixth Amendment right to counsel of choice." (Defendant's Motion at 1.) Based on the claim that the Tobacco Funds were necessary to fund his defense, Defendant's Motion sought a post-indictment, pretrial hearing to challenge the Indictment's finding that probable cause existed to believe the Tobacco Funds would be forfeitable in the event of a conviction. (*Id.* at 3-5.) Such post-indictment, pretrial hearings were approved by the Supreme Court in *United States v. Monsanto*, 491 U.S. 600 (1989), and are often called "*Monsanto* hearings."

By order of this court, Defendant's Motion was referred to Judge Robertson on January 16, 2015. (Dkt. No. 49.) Before Judge Robertson, the parties first addressed the threshold issue of whether Defendant could make a sufficient showing of financial need in order to entitle him to a *Monsanto* hearing on the forfeitability of the Tobacco Funds. After receiving permission from Judge Robertson, both sides filed *ex parte* submissions regarding Defendant's financial resources and ability to pay for his counsel of choice, and a hearing on the issue of financial need was held on February 26, 2015, following which Defendant filed an additional *ex parte* submission. (Dkt. Nos. 60, 62, 63, 66, 70.) On March 6, 2015, Judge Robertson granted so much of Defendant's Motion as sought a *Monsanto* hearing. (Dkt. No. 73 at 1-2.) In so doing, Judge Robertson found that Defendant had made a sufficient threshold showing of financial need in order to be entitled to the *Monsanto* hearing,

3

but she also indicated that the *Monsanto* hearing would "establish whether [Defendant] lacks the funds necessary to pay counsel of his choice." (*Id.* at 1-2, 7-8.)

Following briefing by the parties, the *Monsanto* hearing was held on March 26, 2015, and both sides filed post-hearing memoranda. (Dkt. Nos. 83-84, 87-88, 93, 96-98, 104, 109.) On July 27, 2015, Judge Robertson issued the court's Memorandum and Order. Judge Robertson first found Defendant was not required to make a further showing of financial need at the *Monsanto* hearing beyond the threshold showing previously made. (July 27 Order at 11.) At the same time, Judge Robertson stated in a footnote that, if Defendant had been required to make more than a threshold showing of financial need, she was not persuaded that he had done so. (*Id.* at 12 n.3.) Judge Robertson then found the government had nevertheless demonstrated probable cause to believe the entirety of the Tobacco Funds would be forfeitable in the case of a money laundering conviction and therefore denied Defendant's Motion. (*Id.* at 12-22, 26.) Defendant filed an objection to the July 27 Order, taking issue with Judge Robertson's money laundering forfeiture analysis. (Def. Objection.) The government submitted a response contending that Judge Robertson's forfeiture analysis was correct. (Dkt. No. 122, "Gov't Response.") Additionally, the government took the opportunity to argue that Defendant had not made the requisite showing of financial need and should not have been granted a *Monsanto* hearing in the first place. (*Id.* at 3-5.) Defendant filed a reply that opposed the government's positions on the forfeiture analysis and Defendant's showing of financial need. (Dkt. No. 125, "Def. Reply.") This court held a hearing on September 10, 2015 to resolve these issues. (Dkt. No. 127.) After reviewing the record and the parties' submissions, the court makes the following rulings of law with respect to Defendant's Motion and objection.

### III. STANDARD OF REVIEW

A district court may designate a magistrate judge to hear and determine nondispositive matters pending before the court. 28 U.S.C. § 636(b)(1)(A); Fed. R. Crim. P. 59(a). After the

4

magistrate judge has issued an order, the parties may file objections, and the district judge "must consider timely objections and modify or set aside any part of the order that is contrary to law or clearly erroneous." Fed. R. Crim. P. 59(a); *see also* 28 U.S.C. § 636(b)(1)(A). The district judge undertakes a *de novo* review of those sections of the order to which a timely objection has been made, while unopposed portions of the order are only required to be reviewed for plain error. *See United States v. Wihbey,* 75 F.3d 761, 767 (1st Cir. 1996); *Barreto-Rivera v. United States*, 887 F. Supp. 2d 347, 352 (D.P.R. 2012).

### IV. DISCUSSION

#### A. Waiver and Discretion to Review

The government argues that Defendant should not have been granted a *Monsanto* hearing in the first place because he did not make a sufficient showing of financial need. The government did not make this argument in an objection to Judge Robertson's July 27 Order, but only raised it in its response to Defendant's objection. (Gov't Response at 3-5.) Defendant points this out and correctly states that "[t]he government's objections to the holding of a *Monsanto* hearing have been waived." (Def. Reply at 3.) Pursuant to Federal Rule of Criminal Procedure 59(a), "[f]ailure to object" to a magistrate judge's order "waives a party's right to review." *See also Guzmán-Ruíz v. Hernández-Colón*, 406 F.3d 31, 36 (1st Cir. 2005). By failing to raise the issue via objection, the government has waived review as a matter of right. But the Advisory Committee Notes to Federal Rule of Criminal Procedure 59 confirm that, "[d]espite the waiver provisions, the district judge retains the authority to review any magistrate judge's decision or recommendation whether or not objections are timely filed." Any such review "by the district court following such a waiver is discretionary and not a matter of right." *United States v. Tooze*, 236 F.R.D. 442, 446 (D. Ariz. 2006). Therefore, the court retains the discretion to consider the issue of whether a *Monsanto* hearing should have been held and the parameters of such a hearing. The court reaches the question of the requisite financial need

5

showing at the *Monsanto* hearing itself. While the government frames its argument in terms of whether a *Monsanto* hearing should have been granted, the court views the proper inquiry to be on Defendant's burden of showing financial need after the threshold stage; the court agrees with Judge Robertson that a sufficient threshold showing was made. The question of Defendant's financial need is not only central to the relief sought in Defendant's Motion, it is the core issue which may trigger any forfeiture analysis. Accordingly, the court will exercise its discretion to review this question.

B.   **Financial Need Showing and Hearing**

Defendant's Motion seeks the return of seized monies in order to fund his defense. The primary focus of Defendant's Motion, at least at the outset, should therefore be on his ability to fund his defense. Defendant has a vital interest in retaining counsel of his choice that is derived from the Sixth Amendment to the Constitution. *See Kaley v. United States*, 134 S. Ct. 1090, 1102-03 (2014). Indeed, the Supreme Court has stated the ability to secure one's counsel of choice is at the root of the right to counsel granted by the Sixth Amendment. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 147-48 (2006); *see also United States v. Jones*, 160 F.3d 641, 646 (10th Cir. 1998) (noting selection of one attorney over another can profoundly affect outcome of trial). Despite the vital interest a criminal defendant has in securing his counsel of choice, the government may still restrain the defendant's assets prior to trial if there is probable cause to believe those assets would be subject to forfeiture upon the defendant's conviction. *See* 21 U.S.C. § 853(e); *Kaley*, 134 S. Ct. at 1094. This is true "even when a defendant seeks to use the disputed property to pay for a lawyer." *Kaley*, 134 S. Ct. at 1094. Since the Supreme Court's decision in *Monsanto*, 491 U.S. at 600, courts "have generally provided a [*Monsanto*] hearing to any indicted defendant seeking to lift an asset restraint to pay for a lawyer." *Kaley*, 134 S. Ct. at 1095.

While the First Circuit has not addressed the issue, numerous other circuit courts of appeals have required a defendant seeking a *Monsanto* hearing to make a threshold showing of financial need.

*See, e.g., United States v. Bonventre*, 720 F.3d 126, 129-32 (2d Cir. 2013) (to obtain *Monsanto* hearing, defendant must make sufficient threshold evidentiary showing that he does not have alternative unrestrained assets to fund counsel of choice); *United States v. Holy Land Found. for Relief & Dev.*, 493 F.3d 469, 475 (5th Cir. 2007) (en banc) (pretrial hearing may be required when defendant claims need for restrained assets to pay counsel or cover ordinary living expenses); *Jones*, 160 F.3d at 647 (defendant entitled to hearing upon a demonstration, to court's satisfaction, that there are no assets other than those restrained to pay for counsel and living expenses). Once a threshold showing of financial need is made and a *Monsanto* hearing is granted, a murkier question arises regarding what sort of additional financial need showing must be made at the *Monsanto* hearing itself, if any.

In the July 27 Order, Judge Robertson found that Defendant's threshold showing of financial need was all that he was required to make. Judge Robertson wrote,

> [o]n the question of financial need, the parties have assumed (as did the court) that Defendant's financial need for access to some or all the restrained assets remained a live issue for resolution on the basis of evidence produced prior to and at the *Monsanto* hearing. On further reflection and after careful review of the case law, the court concludes that the single controlling question at this stage is whether the government has met its relatively modest burden of showing probable cause to believe that the restrained asserts are forfeitable. The most persuasive cases describe the showing of financial need a defendant must make to obtain a *Monsanto* hearing as nothing more than a *threshold* showing.

(July 27 Order at 11.) To consider and resolve this question, the court turns to the relevant case law.

The basis of a defendant's right to a *Monsanto* hearing is found in the due process balancing test set out by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319 (1976). That tests weighs the private interest affected by the pretrial asset restraint, the risk of an erroneous deprivation of that interest through the procedures used in lieu of a hearing, and the probable value of an adversarial hearing against the government's interest, including the administrative burden imposed by an adversarial hearing. *Id.* at 335; *see also Jones*, 160 F.3d at 645. In *United States v. Jones*, which is one of the two cases underlying the so-called *Jones-Farmer* rule on whether to grant a *Monsanto* hearing, the

7

Tenth Circuit held, "[a]s a preliminary matter, a defendant must demonstrate to the court's satisfaction that she has no assets, other than those restrained, with which to retain private counsel and provide for herself and her family." *Jones*, 160 F.3d at 647. The court continued, "[i]f a defendant fails to persuade the court on this point, then the private interest of the *Mathews* calculus drops out of the picture, tipping the balance of interests against a post-restraint hearing." *Id.* In other words, Defendant's showing of financial need is crucial if he is to succeed in obtaining a *Monsanto* hearing. Regarding the specifics of the financial need showing, the *Jones* court held that "an accused bears the burden of persuasion" in making the preliminary showing to receive a *Monsanto* hearing, but it was silent as to whether any further demonstration would have to be made at the hearing itself. *Id.* At the very least, though, the *Jones* court was clear that a defendant would bear a burden of persuasion at the preliminary stage.

The second case behind the *Jones-Farmer* rule is the Fourth Circuit's decision in *United States v. Farmer*, 274 F.3d 800 (4th Cir. 2001). In that case, the court determined that a defendant's private interest in obtaining a *Monsanto* hearing "would be absent if [the defendant] possessed the means to hire an attorney independently of assets that were seized." *Id.* at 804. The court in *Farmer* determined that a "threshold showing" of financial need must be made, but the court also stated, "the adversary hearing [the defendant] seeks may call his protestations of indigency into question." *Id.* More specifically, the court held that, at the *Monsanto* hearing, the defendant must "prove by a preponderance of the evidence that the government seized untainted assets without probable cause and that he needs those same assets to hire counsel." *Id.* at 805. The *Farmer* court thus explicitly required a defendant to prove financial need by a preponderance of the evidence at the *Monsanto* hearing. Finally, the *Farmer* court added, "the government for its part may present evidence that [the defendant] has other substantial assets with which to hire attorneys." *Id.*

8

In *United States v. Patel*, the court applied the *Jones-Farmer* rule and found the defendant had made a sufficient threshold showing of financial need by way of "numerous affidavits, documents, bills, and checks . . . which allow[ed] the court to make a meaningful, independent assessment of [the defendant's] current inability to retain counsel without the use of restrained assets." 888 F. Supp. 2d 760, 770 (W.D. Va. 2012). After crediting this initial showing, the *Patel* court followed *Farmer* in holding that the defendant would have to prove financial need at the *Monsanto* hearing by a preponderance of the evidence and that the *Monsanto* hearing provided the government with the opportunity to "present evidence that [the defendant] has substantial assets with which to pay counsel." *Id.* at 771. Other decisions following the *Jones-Farmer* rule have been silent on whether financial need would have to be proved at the *Monsanto* hearing. *See, e.g., United States v. Yusuf*, 199 F. App'x 127, 132-33 (3d Cir. 2006) (unpublished decision); *United States v. Wingerter*, 369 F. Supp. 2d 799, 808 (E.D. Va. 2005); *see also United States v. Kirschenbaum*, 156 F.3d 784, 792 (7th Cir. 1998) (discussing, based on earlier Supreme Court and Seventh Circuit precedent, requirement of threshold showing of financial need while remaining silent on whether additional showing must be made at hearing).

In *United States v. Bonventre*, the Second Circuit found the defendant had failed to meet his threshold burden of demonstrating financial need when, despite filing declarations listing certain assets and expenses, he had failed to "disclose his net worth, provide a comprehensive list of his assets, or explain how he has been paying his significant living expenses." 720 F.3d at 133. The court stated that "a mere recitation" of financial need was not enough, and that "the defendant must make a sufficient evidentiary showing that there are no sufficient alternative, unrestrained assets to fund counsel of choice." *Id.* at 131. Because it had found the defendant's initial showing of financial need lacking, the court did not directly address whether an additional showing would have been required

9

at the *Monsanto* hearing.[2] Similarly, in *United States v. Emor*, the court required the defendant to make a threshold showing of "some evidence that he will be deprived of counsel of choice if he cannot access the seized assets" at issue in the case. 794 F. Supp. 2d 143, 149 (D.D.C. 2011). In that case, the court found the defendant had failed to make the requisite demonstration when he filed a "bare-bones form" that listed his cash on hand and claimed a lack of income and investments. *Id.* Because of the defendant's failure to make a sufficient threshold showing of financial need, the court did not discuss whether an additional showing would be required at the *Monsanto* hearing. *Id.* at 149-50. Whether or not an additional showing would be required, though, it was clear that the evidence provided was not enough to meet the initial burden.

As this review shows, the cases either explicitly require a defendant to prove financial need by a preponderance of the evidence at the *Monsanto* hearing or call for evidentiary proof which satisfies the court that the defendant truly has no alternative, unrestrained assets to pay his counsel of choice. This makes doctrinal sense given that financial need is the basis of the private interest prong of the *Mathews* test underlying a defendant's right to a *Monsanto* hearing in the first place. Moreover, from a practical perspective, it would be anomalous to permit the return of allegedly tainted assets, already found by a grand jury to be forfeitable, to fund a defense if there are alternative untainted assets available for the same purpose. Because Defendant's Motion seeks the return of funds he asserts to be necessary for his legal defense, he must ultimately show this necessity is real under more than a minimal "threshold showing" standard.

---

[2] The *Bonventre* court's only discussion of burdens at a *Monsanto* hearing related to the second prong of the *Jones-Farmer* rule, which requires a defendant to "make a formal prima facie showing that the funds were illegitimately restrained." *Bonventre*, 720 F.3d at 131 (citing *Jones*, 160 F.3d at 647). The court stated that, at a *Monsanto* hearing, the government would bear the burden of showing probable cause to believe the restrained assets were properly forfeitable. *Id.* This could be read as indicating, by negative implication, that further showings of financial need would not be required at the *Monsanto* hearing, but it could also be read as silence on the issue.

Judge Robertson's July 27 Order concluded that a threshold showing of financial need, which Defendant had already made in order to obtain a *Monsanto* hearing, was all that was required. She reasoned that, once the *Monsanto* hearing was granted, the issue of financial need became irrelevant—at the hearing, if the government could demonstrate probable cause to believe the assets would be subject to forfeiture, it would keep them regardless of Defendant's financial need. Judge Robertson further reasoned that if the government could not demonstrate probable cause, then it would have to return the assets regardless of Defendant's financial need. (July 27 Order at 12.) While this conclusion was thoughtfully reached and makes conceptual sense, the court believes it rests on a presupposition that Defendant has made a sufficient showing of financial need without actually requiring him to have done so. The July 27 Order states as much when Judge Robertson explained, "[t]o the extent Defendant's financial ability to pay for counsel of his choice remains a factor at this stage, the court is not persuaded that Defendant has sufficiently demonstrated that he lacks the financial resources to retain his counsel of choice to defend this case." (*Id.* at 12 n.3.) This financial need issue is the core first-step consideration under the specific motion for the return of funds to retain counsel. In the court's view, allowing Defendant to proceed with a *Monsanto* hearing without ensuring that he has made a sufficient demonstration of financial need enables him to elude the requirement at the foundation of the entire *Monsanto* hearing.

This court believes the better approach would be to require Defendant, having made a threshold showing of financial need, to now meet his entire burden of showing financial need as one part of the *Monsanto* hearing itself. As for what Defendant's ultimate burden should be, the court finds *Farmer*'s holding that a defendant should be required to prove financial need by a preponderance of the evidence to be the best approach. *Farmer* is both a foundational case on this issue and the one which addresses it most explicitly; its familiar preponderance standard best balances the competing interests at stake. Additionally, *Farmer*'s preponderance standard aligns with

11

the "burden of persuasion" imposed on defendants in *Jones*, the other foundational case on the issue, and it is a more clear-cut test than those suggested by cases like *Bonventre* and *Patel*. This court finds the preponderance standard to be the appropriate analysis for use at the *Monsanto* hearing, as opposed to relying solely on the very low threshold showing prior to the *Monsanto* hearing, which is designed to be a minimal showing to keep out frivolous claims and therefore should not be the only standard applied to the question of financial need. *See Farmer*, 274 F.3d at 805 ("[T]hreshold showings 'protect the government and its resources from frivolous challenges' to forfeitures." (quoting *Jones*, 160 F.3d at 647)).

The court, at this point, cannot be persuaded Defendant has demonstrated his financial need by a preponderance of the evidence, as he has not been given the opportunity to meet this higher burden. In the July 27 Order, Judge Robertson wrote that, while Defendant made a threshold showing of financial need, she was "not persuaded that Defendant has sufficiently demonstrated that he lacks the financial resources to retain his counsel of choice to defend this case." (July 27 Order at 12 n.3.) Judge Robertson went on to state,

> Defendant continues to support himself and his family in a relatively luxurious manner and he retains ownership of substantial assets and businesses. Perhaps most importantly, if Defendant lacks assets to retain counsel of his choice, it is in significant part because of financial investments he made in businesses he owns at a point in time when he knew that he was facing possible indictment.[3]

(*Id.*) A review of the financial information submitted by both parties supports this conclusion. Defendant's *ex parte* submissions speak to various assets, sources of income, expenses, and liabilities, and Judge Robertson found them sufficient to make a threshold showing of financial need, but it is not clear whether they paint the entire picture of Defendant's financial situation. The government's

---

[3] Defendant seeks to avoid the thrust of this statement by characterizing it as "immaterial dictum," but that misses the mark. (Def. Reply at 3.) Whether or not it was necessary to Judge Robertson's ultimate conclusion, the statement clearly encapsulates her views on this crucial issue, which was left undeveloped by not fully addressing it at the *Monsanto* hearing.

*ex parte* filing seems to suggest they do not, documenting other sources of income and expenses that remain unaddressed by Defendant's submissions. While Defendant's filings are certainly more than "bare-bones" submissions, *Emor*, 794 F. Supp. 2d at 149, they do not "disclose his net worth, provide a comprehensive list of his assets, or explain how he has been paying his significant living expenses." *Bonventre*, 720 F.3d at 133. In short, there is considerable uncertainty on this question, and the court cannot say that Defendant has carried his burden of showing financial need by a preponderance of the evidence. The *ex parte* nature of the parties' filings, while appropriate for the minimal threshold analysis, did not allow for a meaningful adversarial hearing consistent with a preponderance standard. The *Monsanto* hearing must explore this area in more detail for an informed decision to be made under a standard which applies the appropriate level of proof.

In *United States v. Tooze*, a case in which a district court exercised its discretion to review a magistrate judge's decision despite the lack of a timely objection, the district court found that the record provided a sufficient basis to reverse the magistrate judge's decision without the need for an additional hearing. 236 F.R.D. at 446 & n.2. But here, given the uncertainty surrounding Defendant's financial condition and the need for a more complete assessment of all of Defendant's assets and liabilities, the question cannot be resolved on the existing papers alone. A hearing, evidentiary in nature and including witness testimony if necessary, would be both appropriate and useful in determining the whole picture of Defendant's finances and deciding if he needs access to the restrained Tobacco Funds in order to pay for his counsel of choice. This hearing can be preceded by the parties' submission of additional documentary evidence that demonstrates Defendant's net worth and provides a comprehensive listing of his assets, sources of income, expenses, and liabilities. The submissions should also address how Defendant pays his living expenses, address the state of the investments he made while facing possible indictment, and include any other information

needed to give the court a complete picture of Defendant's finances and ability to pay for counsel of his choice with unrestrained assets.

Submissions for the *Monsanto* hearing may be filed under seal, with permission of the reviewing judge, but, absent compelling circumstances, they may not be filed in an *ex parte* manner. Ultimately, the determination of whether to allow such *ex parte* submissions at the *Monsanto* hearing will be in the discretion of the judge conducting that proceeding, but any party seeking to make an *ex parte* filing must make a substantial showing of need. The judge considering such a request must balance the proffered need for an *ex parte* filing and the scope, purpose, and design of the *Monsanto* hearing as detailed in this opinion, bearing in mind the presumption against *ex parte* submissions in our adversarial system. *See, e.g., U.S. v. Boender*, 649 F.3d 650, 658 (7th Cir. 2011); *cf. Farmer*, 274 F.3d at 804 (referring to *Monsanto* hearing as an "adversary hearing"). Accordingly, if either party wishes to rely at the *Monsanto* hearing on any *ex parte* filings already made at the threshold determination stage, that party must make such documents available to the opposing side, unless it can make a substantial showing to justify the court's continued consideration of the documents in an *ex parte* manner.

In accordance with these principles, the court declines to adopt the July 27 Order solely to the extent that a full *Monsanto* hearing, with Defendant bearing the burden of demonstrating financial need by a preponderance of the evidence, was not held. The court recognizes the time and effort Judge Robertson has already put into this case and appreciates her thoughtful decision. As Judge Robertson noted, Defendant has not yet made a persuasive showing of financial need, and the court believes he should be given the opportunity to do so at a hearing. The best forum for such a hearing is before Judge Robertson. She is intimately familiar with this case, and the court is fully confident that she will resolve the question of Defendant's financial need following a hearing in accordance with these guidelines. Therefore, the court sets aside only that portion of the July 27

Order which found Defendant was not required to make a further showing of financial need and remands this case back to Judge Robertson for a hearing at which Defendant must prove by a preponderance of the evidence that he has no alternative unrestrained assets which can be used to pay for his counsel of choice.[4]

## V. CONCLUSION

For the reasons set forth above, this case is remanded to Judge Robertson, pursuant to Federal Rule of Criminal Procedure 59(a), for a hearing on the issue of financial need as it pertains to Defendant's Motion.

It is So Ordered.

    /s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge

---

[4] Because of the court's determination with respect to the financial need issue, this decision does not make any determination relative to the portions of the July 27 Order regarding the forfeiture issue. If Defendant prevails on the showing of financial need, this court will return to the question of forfeitability with the confidence that it will then be ripe for a decision.