UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | |
| | * | Criminal Case No. 14-30044-MGM |
| SYED BOKHARI, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM AND ORDER REGARDING MAGISTRATE JUDGE'S MEMORANDUM
AND ORDER ON DEFENDANT'S MOTION FOR RELEASE OF FUNDS AND
GOVERNMENT'S MOTION FOR ACCESS TO RECORDS FILED *EX PARTE*
(Dkt. Nos. 27, 145, 156)

July 8, 2016

MASTROIANNI, U.S.D.J.

## I. INTRODUCTION

On May 5, 2016, Magistrate Judge Katherine A. Robertson issued a memorandum and order denying Defendant Syed Bokhari's motion for release of funds and the government's motion for access to records filed *ex parte*. (Dkt. No. 156, "May 2016 Order.") Both parties filed objections. This court modifies the May 2016 Order solely with respect to its conclusion regarding Defendant's showing of financial need for access to restrained funds and affirms it in all other respects. Accordingly, both Defendant's and the government's motions are denied.

## II. PROCEDURAL HISTORY AND RELEVANT FACTS

Defendant was indicted on October 16, 2014 and charged with wire fraud, money laundering, aiding and abetting contraband smokeless tobacco trafficking, and violations of the PACT (Prevent All Cigarette Trafficking) Act. (Dkt. No. 2.) On November 24, 2014, Defendant filed a motion seeking the release of certain seized assets (the "Tobacco Funds") he asserted were necessary to enable him to pay for counsel of his choice. (Dkt. No. 27.) On January 16, 2015, this court referred Defendant's motion to Judge Robertson pursuant to Federal Rule of Criminal

Procedure 59(a) and 28 U.S.C. § 636(b)(1)(A). (Dkt. No. 49.) On July 27, 2015, following a hearing, Judge Robertson issued an order denying Defendant's motion on the basis that the government had demonstrated probable cause to believe that all the Tobacco Funds were subject to forfeiture. (Dkt. No. 112, "July 2015 Order.") Defendant objected to the July 2015 Order and the government raised an argument in its response to Defendant's objection that this court also considered. (Dkt. Nos. 120, 122.) After reviewing the July 2015 Order, this court issued an order on November 19, 2015 remanding the matter to Judge Robertson for a further hearing and decision on the preliminary question of Defendant's financial need for use of the Tobacco Funds to pay for counsel of his choice. (Dkt. No. 133, "November 2015 Order.") The November 2015 Order directed that, if Defendant wished to demonstrate financial need to use restrained assets to pay for counsel of his choice, he would have to file a comprehensive list of his assets, sources of income, expenses, and liabilities in order to paint the complete picture of his finances and ability to pay for counsel of his choice with unrestrained assets.

On December 3, 2015, Defendant was charged in a superseding indictment with, among other things, conspiracy under the Racketeer Influenced and Corrupt Organizations ("RICO") Act in violation of 18 U.S.C. § 1962(d). (Dkt. No. 137.) The superseding indictment includes forfeiture allegations under the RICO Act, 18 U.S.C. § 1963(a), and the entirety of the Tobacco Funds are included as forfeitable property. In filings prior to the evidentiary hearing on his financial need, Defendant elected not to provide the financial information identified by this court, citing his Fifth Amendment right against compelled self-incrimination. (Dkt. No. 141.) The government filed affidavits from an IRS Special Agent to support its contention that Defendant "has substantial financial resources." In addition to identifying over $5 million in combined deposits to Defendant's personal bank accounts between July 2012 and December 2014 and documenting Defendant's spending on credit cards, travel, and automobiles, the affidavits stated that Defendant has not filed

tax returns for 2012, 2013, or 2014. (Dkt. No. 144.) The government also moved for access to the financial information Defendant had previously filed *ex parte* and under seal or, in the alternative, for Judge Robertson to disregard those filings when ruling on Defendant's motion. (Dkt. No. 145.)

Judge Robertson held a hearing on the pending motions on February 10, 2016. (Dkt. No. 146.) On May 5, 2016, Judge Robertson issued an order denying Defendant's motion for release of funds and the government's motion for access to records filed *ex parte*. (May 2016 Order at 2.) Holding that "[i]t is well-settled that, regardless of Defendant's financial need, he is not entitled to release of the Tobacco Funds if there is probable cause to believe that the funds will be subject to forfeiture upon his conviction," Judge Robertson declined to resolve the question of Defendant's financial need and instead denied Defendant's motion by concluding all the Tobacco Funds would be forfeitable under the superseding indictment's broader RICO Act forfeiture provisions. (*Id.* at 18, 24.) Defendant objected to the court's forfeitability analysis related to the RICO Act. (Dkt. No. 157.) The government filed its own objection, to preserve its right to review, arguing that Defendant's motion should have been denied for failure to demonstrate financial need and that all the Tobacco Funds are also forfeitable under the money laundering charges in the superseding indictment. (Dkt. No. 158.)

### III.  STANDARD OF REVIEW

After a magistrate judge has issued an order on a nondispositive matter pursuant to Federal Rule of Criminal Procedure 59(a), the parties may file objections, and the district judge "must consider timely objections and modify or set aside any part of the order that is contrary to law or clearly erroneous." Fed. R. Crim. P. 59(a); *see also* 28 U.S.C. § 636(b)(1)(A). The district judge undertakes a *de novo* review of those sections of the order to which a timely objection has been made, while unopposed portions of the order are only required to be reviewed for plain error. *See United*

*States v. Wihbey,* 75 F.3d 761, 767 (1st Cir. 1996); *Barreto-Rivera v. United States*, 887 F. Supp. 2d 347, 351-52 (D.P.R. 2012).

### IV. DISCUSSION

#### A. Waiver Under Rule 59(a)

At the outset, the court would like to clarify its position on the rules governing objections to magistrate judge rulings on nondispositive matters under Federal Rule of Criminal Procedure 59(a). In filing its objection to the May 2016 Order, the government stated it agreed with the order's ultimate result of denying Defendant's motion and with the order's reasoning with respect to forfeitability under the RICO Act, but wished to preserve its arguments regarding other aspects of the order. The government asserted Defendant's motion should also have been denied for failure to demonstrate financial need and that the Tobacco Funds should also have been deemed forfeitable pursuant to the money laundering charges in the superseding indictment. The government indicated it filed its objection because this court's previous November 2015 Order found the government had waived certain arguments by failing to object to Judge Robertson's July 2015 Order. The government asserted that a district court can affirm the decision of a magistrate judge "on any basis available in the record," *United States v. Rodríguez-Peña*, 470 F.3d 431, 433 (1st Cir. 2006), but the government believed this court "takes a different view of waiver."

The court fully agrees that a district court can affirm the decision of a magistrate judge "on any basis available in the record." That is precisely what the court did in its November 2015 Order, which ruled in the government's favor, but on an argument the court found the government had waived. On the issue of waiver, the court's view is governed by Federal Rule of Criminal Procedure 59(a), which states "[a] party may serve and file objections" to a magistrate judge's order on a nondispositive matter and the district judge "must consider timely objections." The rule also specifically states "[f]ailure to object in accordance with this rule waives a party's right to review."

The clear implication is that a party's right to review of a specific issue in the magistrate judge's order—as opposed to the district court's discretion to review such an issue—is only preserved by filing an objection. Any possible ambiguity is resolved by the Advisory Committee Notes, which confirm that Rule 59(a) "contain[s] a provision that explicitly states that failure to file an objection in accordance with the rule amounts to a waiver of the issue."

The government asserts that, "[i]f it were necessary to appeal a decision not because the party was aggrieved by the outcome but because the party disagreed with some aspect of a lower court's reasoning, appellate practice at the district court and at the court of appeals would be transformed markedly." The court recognizes this point, but this proceeding is not an ordinary appeal from a district court to an appeals court. This proceeding involves objections to a magistrate judge's order governed by the provisions of Rule 59(a), which clearly directs parties to file objections and which states that failure to object waives a party's right to review. The court is sensitive to the practical effects of its reading of this rule, but this should not cause such dire results as the government suggests. The Advisory Committee Notes to Rule 59 state that, "[d]espite the waiver provisions, the district judge retains the authority to review any magistrate judge's decision or recommendation whether or not objections are timely filed." While review "by the district court following such a waiver is discretionary and not a matter of right," *United States v. Tooze*, 236 F.R.D. 442, 446 (D. Ariz. 2006), a district court can exercise its discretion to resolve any issue and ensure the magistrate judge's order is modified as appropriate. That is what the court sought to do in its November 2015 Order, and what the court will do with this order. In fact, this case demonstrates the usefulness of the objection procedure under Rule 59(a), because it enabled the government to bring the court's attention to the question of Defendant's financial need showing. The court considers this to be an important question raised by the government's objection.

B. **Financial Need**

In response to the court's November 2015 Order directing him to provide detailed financial disclosures to make a showing of financial need, Defendant invoked the Fifth Amendment privilege against self-incrimination. Judge Robertson found that disclosing such financial information would trigger the Fifth Amendment, and that there was a conflict between Defendant's Fifth Amendment rights and his Sixth Amendment right to counsel of his choice. Out of a commendable desire to avoid resolving "the constitutional dilemma posed by Defendant's motion," Judge Robertson declined to rule on the issue of Defendant's financial need, and instead denied Defendant's motion solely on the "purely statutory basis" of the RICO Act's forfeiture provisions. (May 2016 Order at 18.)[1] The government objects to this section of the May 2016 Order insofar as it avoids the question of financial need and further argues that Defendant has failed to demonstrate financial need. The court agrees with the government and holds Defendant has failed to demonstrate financial need.

As Judge Robertson noted, "[t]o qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating, and compelled." *United States v. Hilsen*, 2004 WL 2284388, at *2 (S.D.N.Y. Oct. 12, 2004) (citing *United States v. Hubbell*, 530 U.S. 27, 34-38 (2000)). Judge Robertson concluded this court's "directive that Defendant prepare and submit comprehensive financial information has the result of requiring a communication that is compelled and testimonial." (May 2016 Order at 14.) The court respectfully disagrees with the reasoning that the November 2015 Order required a communication from Defendant that was "compelled" within the meaning of the Fifth Amendment. Defendant specifically asked to use money deemed subject to forfeiture to pay for counsel of his choice. Defendant, not the government, thereby initiated these

---

[1] While the "fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them," *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988), the court finds it necessary to address the constitutional question here because the determination of a defendant's financial need is an essential preliminary question that must be decided before addressing the issue of forfeitability under the relevant forfeiture statute in a *Monsanto* hearing.

proceedings aware of what showing was needed from him. Defendant's own request is the reason he must now provide financial disclosures if he wishes his *Monsanto* proceedings to move forward.

While the disclosures Defendant must make in order to carry out his request for relief at a *Monsanto* hearing might have an ancillary effect on the direction, strength, or scope of a governmental investigation into his activities, this stands in stark contrast to testimony that is compelled for the direct and sole purpose of furthering a governmental investigation. This is why, as the government argues, the case cited in the May 2016 Order for the proposition that the communications are compelled, *Fisher v. United States*, 425 U.S. 391 (1976), is inapposite. In *Fisher*, courts ordered enforcement of IRS-served summonses directing attorneys to produce their clients' documents in connection with an IRS investigation. *Id.* at 393-95.[2] The defendants in *Fisher* were compelled to produce documents by court order for the purpose of furthering the government's investigation. Here, by contrast, Defendant has been directed to make financial information available if he wishes to take advantage of proceedings that he initiated and would entitle him to relief that he requested. Defendant is free not to provide any financial information. That is his right, and by making that choice he will not suffer any adverse action from or be subject to any further investigation by the government. From Defendant's perspective, the only negative effect of his decision not to provide the financial disclosures is that he will be unable to succeed at the *Monsanto* hearing he commenced to challenge the government's assertion that there is probable cause to believe all the Tobacco Funds are forfeitable.

Given that he was already represented by his counsel of choice on a limited basis, Defendant made the request for a *Monsanto* hearing with the knowledge that a financial need showing would be

---

[2] The May 2016 Order also cited *Doe v. United States*, 487 U.S. 201, 210 (1988) with respect to whether a communication is testimonial. To the extent that *Doe* was also cited in relation to whether a communication is compelled, it is also inapposite, because it involved a court ordering the target of a grand jury investigation to authorize foreign banks to disclose records of his accounts. *Id.* at 202.

7

required at some stage. Under the *Jones/Farmer* line of cases, providing financial information has long been held to be a necessary and appropriate first step in order to obtain relief at a *Monsanto* hearing. *See United States v. Farmer*, 274 F.3d 800, 805 (4th Cir. 2001) (at a *Monsanto* hearing, the defendant must "prove by a preponderance of the evidence that the government seized untainted assets without probable cause and that he needs those same assets to hire counsel"); *United States v. Jones*, 160 F.3d 641, 647 (10th Cir. 1998) ("As a preliminary matter, a defendant must demonstrate to the court's satisfaction that she has no assets, other than those restrained, with which to retain private counsel and provide for herself and her family."). Reasoning from this line of cases, the court's November 2015 Order held that Defendant would have to demonstrate financial need by a preponderance of the evidence at the *Monsanto* hearing in order to be eligible for the relief he requested. As the government argues, Defendant has not been compelled to make any communications that equate to compelled testimony under the Fifth Amendment merely because he must abide by the requirements of a procedure he initiated. A rule treating financial disclosures related to a *Monsanto* hearing as Fifth Amendment compelled testimony, and then permitting a defendant to avoid the disclosure requirement by invoking the Sixth Amendment, would have the effect of allowing virtually any defendant to circumvent the long-established requirement of demonstrating financial need before obtaining relief at a *Monsanto* hearing.

      The tension between the Fifth and Sixth Amendments forces defendants to make difficult choices about how they balance their rights in *Monsanto* proceedings that they initiate, but it does not allow them to make an end run around the financial need showing. Defendant created the situation that he asserts pits his Fifth Amendment rights against his Sixth Amendment rights, but he cannot frame these rights so as to secure the protections of both while avoiding the burden that comes with demonstrating financial need to access restrained assets to pay for his counsel of choice. As Judge Robertson noted, while the Sixth Amendment right to counsel of choice is fundamental, "it is not

absolute." (May 2016 Order at 13.) *See also Kaley v. United States*, 134 S. Ct. 1090, 1096 (2014) ("Sometimes 'a defendant will be unable to retain the attorney of his choice,' if he cannot use forfeitable assets." (quoting *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 625 (1989))). Defendant's first choice of counsel is Attorney Weinberg. If he is unable to retain Attorney Weinberg, Defendant will not be denied counsel entirely, but he will instead have to retain his second or possibly third choice of counsel. Because failing to provide the disclosures for the financial need showing does not operate to completely deny Defendant of his right to counsel, or even his right to choose counsel, he has not been compelled to make such disclosures for the purposes of the Fifth Amendment.

By making the strategic decision not to provide the financial information identified by the court, Defendant has not satisfied his burden of showing financial need by a preponderance of the evidence. Defendant's failure to demonstrate financial need for access to the Tobacco Funds is an independent basis on which his motion for release of funds is denied, and the May 2016 Order is modified in this regard.

### C. Forfeiture Under the RICO Act

The superseding indictment charges Defendant with conspiracy to conduct an enterprise through a pattern of racketeering activity. Specifically, pursuant to 18 U.S.C. § 1962(d), Defendant is charged with conspiracy to violate 18 U.S.C. § 1962(c), under which it is "unlawful for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." Judge Robertson denied Defendant's motion for release of funds after finding that, "[b]ased upon the facts alleged in the superseding indictment, there is probable cause to think that the Tobacco Funds . . . will be forfeitable in their entirety under three subsections of § 1963(a) if Defendant is convicted of violating the RICO Act." (May 2016 Order at 24.) As Judge Robertson noted, the RICO Act's

forfeiture provisions are very broad. *See United States v. Cherry*, 330 F.3d 658, 669 n.18 (4th Cir. 2003) ("The RICO forfeiture provision is by far the most far reaching forfeiture provision, sweeping far more broadly than the substantive RICO offense itself."). The court agrees entirely with Judge Robertson's reasoning and conclusion.

In his objection, Defendant asserts the forfeitability inquiry should be limited to the forfeitability of the Tobacco Funds at the time of the original *Monsanto* hearing based on the original indictment. Defendant does not cite any authority for this proposition, and the court sees no basis for ignoring the superseding indictment and its RICO Act charges. Defendant's remaining objections relate to Judge Robertson's analysis under three subsections of the RICO Act's forfeiture provisions found in 18 U.S.C. § 1963.

Judge Robertson first found the entirety of the Tobacco Funds to be forfeitable under § 1963(a)(2)(A), which requires a person to forfeit "any interest in any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962." In his objection, Defendant cites *United States v. Cianci*, 218 F. Supp. 2d 232, 236 (D.R.I. 2002), which held that, "[s]ince conspiracy to conduct an enterprise is not one of the activities specified in [§ 1963](a)(2)," the forfeiture provision does not reach defendants convicted of conspiracy pursuant to § 1962(d). The court agrees with Judge Robertson that the analysis in *Cianci* is unpersuasive because it is contrary to the language and structure of the RICO Act. Section 1963(a) states, "[w]hoever violates *any* provision of section 1962 . . . shall forfeit" interests or property in accordance with the subsequent forfeiture provisions. 18 U.S.C. § 1963(a) (emphasis added).

The statute's plain language thus subjects a conspiracy conviction under § 1962(d) to the same forfeiture treatment as a conviction under the other subsections of § 1962. "Section 1963 is purposely broad. . . . Section 1963 was designed to totally separate a racketeer from the enterprise he operates." *United States v. Busher,* 817 F.2d 1409, 1412-13 (9th Cir. 1987) (citing *Russello v. United*

10

*States,* 464 U.S. 16, 28 (1983)). As Judge Robertson notes, numerous decisions have come to the same conclusion. *See, e.g., United States v. Caporale,* 806 F.2d 1487, 1509 (11th Cir. 1986) ("The language and legislative history of the statute plainly indicate that Congress intended to punish a conspiracy to violate RICO with the same tools it made available to punish substantive violations."); *United States v. Bangiyev*, 141 F. Supp. 3d 589, 598 (E.D. Va. 2015) (assets of defendant's business held subject to forfeiture under §1963(a)(2) after defendant pleaded guilty to participating in a RICO conspiracy); *United States v. Hosseini*, 504 F. Supp. 2d 376, 381 (N.D. Ill. 2007) (defendants' interest in criminal enterprise deemed forfeitable under § 1963(a)(2) after conviction of RICO conspiracy); *United States v. Saccoccia*, 823 F. Supp. 994, 1001 (D.R.I. 1993) (same), *aff'd*, 58 F.3d 754 (1st Cir. 1995).

Judge Robertson also found the Tobacco Funds to be forfeitable under § 1963(a)(1), pursuant to which a person must forfeit "any interest the person has acquired or maintained in violation of section 1962." "[T]he term 'interest' comprehends all forms of real and personal property, including profits and proceeds," *Russello,* 464 U.S. at 21, and it "is not limited to a defendant's interest in the enterprise but, rather, encompasses any interest acquired in violation of RICO." *Saccoccia,* 823 F. Supp. at 1002. As Defendant points out, forfeitures under § 1963(a)(1) "are limited to property interests that would not have been acquired or maintained but for the defendant's racketeering activities. . . . This 'but for' test is a proportionality rule of forfeiture." *United States v. Angiulo*, 897 F.2d 1169, 1213 (1st Cir. 1990). With this in mind, and accepting the superseding indictment's allegations as true, Judge Robertson concluded the entirety of the Tobacco Funds were forfeitable under this "but for" test because "Defendant would not have been able to obtain tobacco products on credit but for the tainted proceeds that he obtained from the operation of the RICO enterprise," which he used to pay his creditors and which enabled him "to purchase additional tobacco products on credit." (May 2016 Order at 30-31.) The court agrees with this

reasoning. While Defendant is correct that interests subject to § 1963(a)(1) "are only forfeitable to the extent they are actually tainted by unlawful activities," *Angiulo*, 897 F.2d at 1213, taking the allegations in the superseding indictment as true, the portion of the Tobacco Funds derived from tobacco that was purchased on credit and not yet paid for meets this test.

Finally, Judge Robertson found the Tobacco Funds to be forfeitable under § 1963(a)(3), which requires that a person forfeit "any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity . . . in violation of section 1962." As Judge Robertson recognized, "[p]roof that the proceeds of racketeering activity enabled a defendant to acquire the property is sufficient to warrant forfeiture under § 1963(a)(3)." *Saccoccia*, 823 F. Supp. at 1005. Defendant argues "the tobacco obtained on credit was neither derived from proceeds, nor did it itself represent proceeds." But, taking the superseding indictment's allegations as true, the court agrees with Judge Robertson that all of the Tobacco Funds are traceable to proceeds of the alleged racketeering activity, because the tainted proceeds from the alleged RICO enterprise enabled Defendant to acquire the tobacco obtained on credit in addition to the tobacco that was already paid for.

Having concluded that Judge Robertson's forfeiture analysis under the RICO Act is correct, and noting that the RICO Act's forfeiture provisions are broader than those available under the money laundering statutes, the court sees no need to review Judge Robertson's analysis of forfeitability pursuant to the money laundering charges. Finally, the court agrees with Judge Robertson's denial of the government's motion for access to Defendant's *ex parte* filings because Judge Robertson did not consider them.

## V.  CONCLUSION

Judge Robertson's May 2016 Order (Dkt. No. 156) is MODIFIED solely to the extent that the court finds Defendant has failed to demonstrate financial need for access to restrained funds by

a preponderance of the evidence, and the court concludes Defendant's motion for release of funds should have been denied on that basis as well. Judge Robertson's May 2016 Order is otherwise AFFIRMED. Therefore, Defendant's motion for release of funds (Dkt. No. 27) is DENIED. The government's motion for access to Defendant's *ex parte* filings (Dkt. No. 145) is DENIED.

It is So Ordered.

       /s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge